Syllabus.

# Richmond.

## Norfolk and Western Railway Co. v. Potter.

November 18, 1909.

Absent, Buchanan, J.

1. APPEAL AND ERROR—*Amount in Controversy—Disallowed Set-Off.*—A set-off is equivalent to an action, and where the amount of a set-off disallowed by the trial court exceeds three hundred dollars the amount in controversy is within the jurisdiction of this court.

2. APPEAL AND ERROR—*Objection for the First Time—Filing of Set-Off—Case Heard on Set-Off—Estoppel.*—A plaintiff will not be allowed to make the objection for the first time in this court that a set-off was not filed by the defendant in the trial court, where it appears that, although the set-off was not marked filed, and the record does not show the filing, the account of set-offs was in the record before the trial began, and the plaintiff had notice of it; that the defendant called attention to it, witnesses were examined with respect to it, the instructions dealt with the subject and were based upon it, and both parties, throughout the trial, treated it as a part of the record to be considered by the jury and the court.

3. CARRIERS—*Delay in Delivering Goods—Action for Price—Measure of Damages.*—In an action against a carrier to recover the sale price of goods which the plaintiff has had reshipped to him from a distant State over the lines of connecting carriers because the consignee refused to accept them, but the delivery of which has been delayed after arrival because of the inability of the carrier to get an account of back charges and storage from the connecting carriers, where there is no proof of any such appropriation of the goods as would charge the carrier with the original sale price thereof, and there is no claim in the pleadings or proof of any other loss or damage to the goods, the only damage, if any, which the plaintiff can recover is that resulting from a failure to deliver the goods after their return, and the measure of this damage is the difference between the

market value of the goods at the time they should have been delivered to the plaintiff and the time the defendant did surrender the possession, or was ready and offered to surrender it.

Error to a judgment of the Circuit Court of Botetourt county in an action of *assumpsit*.   Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

*E. M. Pendleton, Marshall McCormick* and *Theodore W. Reath,* for the plaintiff in error.

*Benjamin Haden,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of *assumpsit* was instituted by T. H. Potter to recover of the Norfolk and Western Railway Company the value of one hundred and fifty cases of canned tomatoes, shipped by the plaintiff from Troutville, Va., to Cedar Town, Ga., and also twenty dollars for expenses incurred in four trips with his wagon and horses from his home in Botetourt county to Troutville, for the purpose of removing the tomatoes, which had been returned by order of the plaintiff from Cedar Town to Troutville.   The aggregate claim of the plaintiff was $282.50, and the claim for storage and freight charges asserted by the defendant was $414.64.   There was a verdict and judgment in favor of the plaintiff for $156.81, and it is insisted that this court is without jurisdiction, because the amount involved is less than three hundred dollars.

The claim by way of set-off, which is equivalent to an action, is for more than $300, and it is not denied that this determines the right of the defendant to this writ of error; but it is contended that the record does not show that the set-off was filed.

The record does not show that the clerk marked the set-off "filed," nor does it appear that there was an entry in the order

book showing the filing. It does, however, abundantly appear that the account of set-offs was in the record before the trial began, and that the plaintiff had notice of it. The trial judge, in bill of exception No. 1, certifies as a fact "that the defendant in open court called attention to its account of set-offs, theretofore left with the clerk, with directions to file the same; that the paper was produced by the clerk and was treated by the court all during the trial as part of the record, although not actually marked filed." The record shows that the witnesses were examined with respect to the set-offs; the instructions deal with the subject and are based upon it, and it clearly appears that this claim of the defendant was, throughout the trial, treated by both parties as part of the record to be considered by the jury and determined by the judgment of the court. In the face of such evidence it cannot be successfully claimed that the case was not heard upon the set-offs, or that the account of set-offs was no part of the record. Under such circumstances the plaintiff is estopped and will not be permitted to make such an objection for the first time in this court. It would be to allow him to take advantage of his own wrong, for had he made the objection in the court below that the account of set-offs had not been formally filed the matter would have doubtless received prompt attention and correction. *Deatrick's Admr.* v. *State Life Ins. Co.,* 107 Va. 602, 59 S. E. 489.

The case shown by the record is that on the 29th and 31st days of May, 1907, the plaintiff delivered to the defendant company at Troutville, Va., one hundred and fifty cases of tomatoes, to be shipped to Cedar Town, Ga. The cases containing these tomatoes started from Troutville about June 1, 1907, and reached Cedar Town on June 26, 1907. The line of the Norfolk and Western Railway Company extended only from Troutville as far as Bristol, Virginia, at which point connection was made with the Southern Railway Company, which connected with the Central of Georgia; the latter being the last carrier of the tomatoes to their destination at Cedar Town. Messrs. Holla-

way & Smith, the consignees, refused to accept the tomatoes because not in good condition.

Considerable correspondence ensued between the plaintiff, Potter, and the consignees, which resulted in a final rejection of the goods by Hollaway & Smith. This correspondence shows that there was no suggestion that the railroad companies were in any way responsible for the condition of the goods. The dispute was entirely as to the marketable condition of the goods when shipped by the plaintiff. As late as August 12, 1907, this controversy was still going on between the parties, on which day the plaintiff wrote Messrs. Hollaway & Smith the following letter:

"Dear Sir,—Yours rec'd. I see nothing to be gained by disputing over a matter in which both of us seem to be equally positive. In regard to the tomatoes being some swells which my customers had returned, would say I have never had one case returned yet, and I had three thousand cases in the same lot from which yours were taken, and only nineteen cans as yet have been reported swells and only two were shipped since yours, and every can has been paid for without quibble except yours. You say you would not ship 'such stuff.' What do you mean by 'such stuff'? You say you bought 'standard goods.' Can you tell me what are standard goods? You have never said in what particular my goods are not 'standard.' They undoubtedly are 'standard' weight and are packed in 'standard' cans, and if the can contains anything except what the label denotes you may report me to the pure food commission and have the goods examined at my expense.

"I know the goods are all right except a very few swells and leaks, which I always agree to pay for. I told the broker when I sold the goods that they were a little rusty from being out the cases, as it was impossible for us to get cases last year during the canning season. He asked me if the tomatoes were all right. I said yes, and I stand by that statement. I have proposed to do as fair with you as I know how—that is, to pay you for every break and swell, and you positively decline to do this.

"Now I am willing for the court of Georgia to pass on it, and if they say my goods are worthless, then I do not want anything for them; or if it is fair and honest for a firm to order goods, examine them without authority from anybody, hold them two months, then report them worthless after new goods are on the market, then I have no conception of fairness. I have ordered the broker to come to your town and look after it, and if you ordered the goods and are worth the money, you may depend upon paying for them; if not I will see by what authority the railroad company let you into my goods without first complying with the written instructions."

Subsequently, on August 30, 1907, the plaintiff, Potter, requested the defendant company, in writing, at Troutville, to have the one hundred and fifty cases of tomatoes returned from Cedar Town to Troutville. This request was communicated through the proper channel to the agent of the Central of Georgia Railway at Cedar Town, and the goods were reshipped and arrived at Troutville on September 21, 1907. The car containing these goods on their return trip arrived at Troutville on what is called an "astray way bill," which means, as explained in the record, that the goods were consigned to no one and not accompanied by way or other bill indicating what the back charges were. These back charges included storage of the goods at Cedar Town from June 26 to September 1, 1907, when the goods were, by order of the plaintiff, reshipped to Troutville, and freight charges due the several carriers engaged in their transportation. The Central of Georgia was the initial carrier in reshipping the tomatoes to Troutville, and it is obvious that it was not the fault of the defendant company that the goods arrived at Troutville on an "astray way bill" and without a revenue bill accompanying the car on its return trip showing the back charges.

Upon the arrival of the goods at Troutville the plaintiff was promptly notified of the fact, and the further fact that the agent at that place had received no information as to the amount of the back charges. It appears that the plaintiff came to Troutville

on four different occasions with his teams, prepared to remove the goods, offering to pay a reasonable freight charge and to surrender the original bills of lading which had been issued to him when the tomatoes were shipped to Cedar Town, but did not remove them because the agent of the defendant company at Troutville could not, as stated by him, deliver the goods until the back charges were paid, and he had not been informed as to the amount of such charges.

On November 29, 1907, the plaintiff presented to the agent of the defendant company at Troutville his claim in writing for loss and damage. The claim presented, as well as the claim sued upon and filed as a bill of particulars with the declaration, was for the full original price which his Georgia consignees had agreed to pay the plaintiff, and expenses of four trips with his teams to remove the goods. This claim was based upon the theory that the defendant company, by withholding the delivery of the goods, upon their return to Troutville, for the reason stated, had appropriated or converted them to its own use, and had thereby become liable for the original agreed price between the plaintiff and his consignees, who had rejected the goods because they did not measure up to the representations that the plaintiff had made of them.

On December 31, 1907, the agent of the defendant company at Troutville notified the plaintiff, in writing, that he had received the revenue bill showing the back charges of freight, etc., and requesting him to call and pay these charges and remove his goods. This the plaintiff declined to do, and six months later institutes this action of *assumpsit*.

The declaration alleges that the defendant company had promised to pay the sum sued for, but had disregarded its said promise. The plaintiff himself testifies that neither the defendant company nor any of its agents or officials had ever promised him to pay for these goods, but that on the contrary they had disputed his right to charge them to the defendant.

The declaration proceeds alone upon the theory that the de-

fendant company had appropriated and converted the tomatoes to its own use, by reason of its refusal, after they were returned to Troutville, to deliver them to the plaintiff on the four occasions mentioned; and had thereby become liable to the plaintiff for their value. There were averments, by way of recital, that there was an unreasonable delay in the shipment of the tomatoes from Troutville to Cedar Town, and on the trip from the latter place back to Troutville, but there is not one word of proof in the record to show that there was any such unreasonable delay. Nor is there any proof that there was any damage done to these goods, physically or otherwise, either in going from Troutville to Cedar Town, or in returning from the latter place to the former. There is no averment of damage, except in a vague and indefinite way, and that damage is only alleged to have been occasioned by delay in shipment, and is entirely without proof to sustain it. The bill of particulars follows the theory of the declaration and contains no reference to, or item of, damage or loss.

Under the pleadings and evidence in this case, there being no proof of any such appropriation of the tomatoes as would charge the defendant with the original sale price of the goods, the only damage for which it could be held responsible was the loss, if any, accruing to the plaintiff because of the delay in turning over to him the goods after their return to Troutville. This loss must be measured by the difference between the market value of the goods at the time the possession thereof should have been surrendered to the plaintiff and the time the defendant did surrender such possession, or was ready and offered to surrender such possession.

Under the pleadings and evidence in this case there were but two questions to be submitted to the jury: First, whether or not the defendant was responsible for the delay in delivering the goods to the plaintiff after their return to Troutville, and, if so, what damage, if any, that delay caused the plaintiff; and, second, the amount the defendant was entitled to recover by reason of its account of set-offs.

It is unnecessary to review in detail the numerous instructions given in this case.   It is sufficient to say that they do not properly submit the case to the jury.   They are, in the main, not justified by the pleading, not based upon evidence, and relate to subjects wholly foreign to the questions at issue.

For these reasons the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*